UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| TROY EUGENE HUFFMASTER, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 2:14-CV-248 |
| § | |
| WILLIAM STEPHENS, § | |
| § | |
| Respondent. § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Troy Eugene Huffmaster is an inmate in the Texas Department of Criminal Justice - Criminal Institutions Division ("TDCJ-CID") and currently is incarcerated at the Clements Unit in Amarillo, Texas. The actions about which he complains occurred in Nueces County, Texas. Petitioner filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254 on May 27, 2014.[1] The underlying conviction which is the subject of the petition is a 2008 Nueces County conviction for escape, bodily injury, which later was modified to escape from a secure correctional facility. Petitioner claims that his constitutional rights were violated during the trial and appellate proceedings. Respondent filed a motion for summary judgment on September 17, 2014 to which Petitioner responded on March 31, 2015 (D.E. 18, 29). For the reasons set forth below, it is recommended that Respondent's Motion for Summary Judgment be granted and

---

[1] Petitioner stated under penalty of perjury that he placed his petition in the prison mail system on May 27, 2014 and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases.

Petitioner's Application for Habeas Corpus Relief be denied. It is further recommended that any request for a Certificate of Appealability be denied.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331. Petitioner was convicted in Nueces County, Texas. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## BACKGROUND

The following recitation of facts is taken from the opinion by the Thirteenth Court of Appeals:[2]

> On the night of July 5, 2008, Troy Huffmaster was arrested for public intoxication. He was transported to the Port Aransas jail detention facility by Officer Sandra Flores, a sergeant with the Port Aransas Police Department. While they were inside the detention facility's booking area, Officer Flores told Huffmaster to have a seat. As Officer Flores started to do some paperwork, she heard a deputy arguing with someone. Hearing this, Officer Flores told Huffmaster "not to move" and then helped the deputy. At this time, Officer Flores heard Joe Garza, a paramedic who was inside the detention facility, "yell that he [Huffmaster] was escaping." After helping the deputy, Officer Flores immediately ran after Huffmaster, chasing him behind the police station. She caught up to him long enough to pepper spray him, but he kept running.

> As the chase entered a residential area, Officer Flores grabbed both of his shoulders. When Huffmaster leaned forward, both of them fell to the ground. Huffmaster struggled with Officer Flores, and she again pepper sprayed him in the face. Huffmaster was on his stomach, and she was on his back. He then tried to bring his arms out from underneath him, trying to turn around, and "[p]ushing his weight back." When he turned around and "lifted one arm up," she put a cuff on

---

[2] It appears that Respondent filed only the second part of the Reporter's Record with the Court. *See* D.E. 17-13. However, the facts in this case are not in dispute and this Memorandum and Recommendation was prepared without reference to the first part of the Reporter's Record. Should the District Court determine that the first part of the Reporter's Record is necessary, Respondent will be ordered to produce it.

it. Then she put her knee into his back and handcuffed his hands behind his back. Officer Flores suffered a knee injury while struggling with Huffmaster.

Joe Garza, the paramedic who was inside the detention facility when Huffmaster ran out the door, testified that when Officer Flores went to help the deputy with the combative subject, he saw Huffmaster "get up and head for the door." At that point, Garza told Officer Flores that Huffmaster "was running." Garza ran after Huffmaster, but Officer Flores caught up to him first. While Garza was running to where Officer Flores and Huffmaster were, he saw that "she was still struggling with him." He saw Officer Flores "on top of him. He was clearly trying to push her off to, you know, continue getting away. She was able to, you know, keep him contained and took him into custody at that time."

Huffmaster testified he understood he was under arrest for public intoxication. He testified that while he was in the detention facility, "another gentleman I guess they had arrested had come in. And he was screaming and hollering and yelling and they were trying to physically, you know, get him under control. . . . They were fighting with him to get him under control." When defense counsel asked him, "[W]hat reaction did that cause in you?", he said, "I felt fear of my life at that particular point in time." He said he "ran out the door and I had no idea where I was going. I just –I ran." He heard Officer Flores running up behind him, screaming for him to stop. He testified Officer Flores "came up from behind. We went to the ground. She put her knee in my back and leaned over and hit me again with another burst of pepper spray." When she sprayed him with the pepper spray, he "tried to get [his] hands up to block the spray." He said he had no intention of hurting her. He denied he was trying to either hit or strike her.

Huffmaster stated he was on parole and that he had been convicted of the felony offenses of burglary of a habitation, burglary of a building, and theft. For these offenses, he served time in prison and was "paroled out" in 2002.

On cross-examination, Huffmaster testified, without objection, that he had four prior felony convictions; two for burglary of a habitation; one for burglary of a building; and one for second-degree felony theft. He knew he was not allowed to drink alcohol while on parole. He testified he knew "for sure" his parole would not have been revoked because of the public intoxication offense "[b]ecause I've been through the process." He also testified that he had nothing to fear from Officer Flores and that he knew he was not free to leave the detention facility. He testified he ran:

> [b]ecause I was afraid. I don't know if anybody in here has ever had an anxiety attack. But I take medication for anxiety. And for whatever reason, at that particular point in time, whether it was something that the

> gentleman said or just seeing them struggle, all of the anxiety, all the worrying, all the stress came to a head. And I just—I seen them struggling and I freaked out and I took off and I ran. It had nothing to do with my parole. . . ."

*Huffmaster v. State*, No. 13-08-599-CR, 2009 WL 8730145 (Tex. App. –Corpus Christi 2009, pet. ref'd)(located herein at D.E. 17-17 at 26-45).

Petitioner was indicted on August 21, 2008 and re-indicted on September 18, 2008. Petitioner was charged with escape, in violation of Tex. Pen. Code § 38.06. Under "Degree," the offense was described as "Third degree punished as second degree, habitual felony offender." In the body of the second indictment, petitioner was accused of escaping from Flores's custody while he was under arrest and confined in a secure correctional facility and also of causing Flores bodily injury while effecting his escape. The indictment also alleged Petitioner had been convicted of two previous felonies, burglary of a building and burglary of a habitation (1 CR 2-3).[3]

Petitioner pleaded "not guilty" and was tried before a jury. The jury found him guilty of escape, as alleged in the indictment (1 CR 21). The punishment charge described the offense of escape as a second degree felony and the court read the charge to the jury (1 CR 22). During the punishment phase, the jury heard evidence that Petitioner had previously been convicted of four felonies and was classified as an habitual felony offender. Based on that classification, he was subject to a mandatory minimum sentence of twenty-five years and a maximum sentence of ninety-nine years or life. Tex. Pen. Code § 14.42(d). The jury assessed a twenty-five year sentence (1 CR 27).

---

[3] "CR" is the Clerk's Record in Petitioner's case, located at D.E. 17-12.

Petitioner filed a direct appeal. In response, the State conceded that Flores's bodily injury occurred after Petitioner had escaped, rather than "to effect his escape" and recommended that his judgment be modified to reflect conviction of third-degree felony escape rather than second-degree felony escape which requires bodily injury to effect the escape (Appellant's brief in *Huffmaster v. State*, No. 13-08-599-CR; D.E. 17-1). The Thirteenth Court of Appeals modified Petitioner's conviction to show that he was convicted of third-degree felony escape. *Huffmaster v. State*, 2009 WL 8730145 at *9 (D.E. 17-11 at 18-19). Petitioner filed a petition for discretionary review and it was refused on December 5, 2012.[4] *Ex Parte Huffmaster*, No. WR-77,273-02 at 135; D.E. 17-17 at 48).

Petitioner filed an application for habeas corpus relief in state court on November 1, 2013. *Id.* at 17-90 (D.E. 17-16 at 21-91 and D.E. 17-17 at 1-3). The State filed an answer, and the trial court entered findings of fact and conclusions of law on December 3, 2013. *Id.* at 137 (D.E. 17-17 at 50). On February 19, 2014 the Texas Court of Criminal Appeals denied Petitioner's application without written order on the findings of the trial court without a hearing. *Id.* at "Action Taken" page (D.E. 17-16 at 2).

Petitioner filed this federal petition for habeas corpus relief on May 27, 2014 and makes the following arguments:

> (1) He received ineffective assistance of trial counsel when his counsel
> (a) failed to object to or move to quash the indictment, which was fundamentally defective;

---

[4] Petitioner initially missed the deadline for filing a PDR but sought permission to file an out-of-time PDR and it was granted. *See Ex Parte Huffmaster*, No. WR-77,273-01 (D.E. 17-14).

(b) failed to object to the jury charge which was based on the fundamentally defective indictment and
(c) failed to investigate and present evidence from either an expert or lay witness that Petitioner suffers from anxiety;

(2) He received ineffective assistance of appellate counsel when his attorney
(a) failed to raise the issue of ineffective assistance of trial counsel;
(b) failed to challenge the denial of the motion for directed verdict;
(c) failed to challenge the faulty jury charge;

(3) The trial court erred when it included the bodily injury allegation in the jury charge; and

(4) The appellate court erred when it modified the judgment without remanding for a new trial based on the fundamentally defective indictment and jury charge.

In Respondent's motion for summary judgment, he argues that Petitioner received effective assistance from trial and appellate counsel, the trial court acted within its discretion when it included the bodily injury allegation in the jury charge and Petitioner's allegation regarding the appellate court fails to state a claim for habeas corpus relief. Respondent concedes that Petitioner has exhausted the claims as he has construed them and also that the petition is timely and not barred as second or successive.

Petitioner responded to the motion for summary judgment by reiterating his arguments regarding his eligibility for habeas corpus relief. In addition, Petitioner claims he should have been convicted of only misdemeanor escape.

## APPLICABLE LAW

### A. Standard of Review

Under the AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d (2000). Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001)(citing *Williams*, 120 S.Ct. at 1522-1523).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A federal habeas court must determine what theories or arguments supported, or could have supported, the state court's decision. Then it must ask whether it is possible that fair-minded jurists could disagree that the

arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Harrington*, 131 S.Ct. at 786. Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

The standard is very difficult to meet. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court litigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Id.* "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999). A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006)(citations omitted). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id.* In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S.Ct. at 784.

### C. Ineffective Assistance of Trial Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. *Id.*, 466 U.S. at 687-88, 104 S.Ct. at 2064. Petitioner must show "significant prejudice" in a noncapital context. *Armstead v. Scott*, 37 F.3d 202 (5th Cir. 1994)(citing *Spriggs v. Collins*, 993 F.2d 85, 88, n. 4 (5th Cir. 1993)).

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.*, 466 U.S. at 690.

An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-690, 104 S.Ct. 2052. . . . Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess

counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; . . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

*Harrington*, 131 S.Ct. at 788. In addition, federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). "When § 2254 (d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### (1) Failure to File Motion to Quash

Petitioner alleges that the indictment was fundamentally defective and his attorney provided ineffective assistance when he failed to object to or move to quash the indictment. The state habeas court found that Petitioner could not show prejudice from his attorney's failure to file a motion to quash the indictment and Petitioner has not shown that this conclusion was unreasonable under the AEDPA standard.

Escape is a violation of Texas Penal Code § 38.06 (West 2007). The version of the statute in effect at the time Petitioner committed the offense provided in relevant part that escape was a Class A Misdemeanor if the person escaped from custody while under arrest for, charged with, or convicted of an offense. Tex. Pen. Code § 38.06(a) and (b). Escape was a third-degree felony if the actor was under arrest for, charged with, or convicted of a felony; or confined in a secure correctional facility. Tex. Pen. Code § 38.06(c). Escape was a second degree felony if the actor "to effect his escape" caused bodily injury. Tex. Pen. Code § 38.06(d). Thus, the difference between misdemeanor

escape and third-degree felony escape was whether the person was being held on a felony or confined in a secure correctional facility. The difference between a third- and a second-degree felony was whether the actor caused bodily injury to effect his escape.

In the caption of Petitioner's indictment, the escape offense was described as "third degree punished as second degree, habitual felony offender." However, the text of the indictment tracked the language of the second-degree felony, alleging Petitioner "was . . . confined in a secure correctional facility and to effect his escape, the defendant caused bodily injury to Sandra Flores by resisting her." (I CR 2-3; D.E. 17-12 at 6-7). The caption of an indictment is not part of the indictment. *Adams v. State*, 222 S.W.3d 37, 53 (Tex. App. –Austin 2005, pet. ref'd). Any error contained in the caption is considered harmless surplusage unless a showing of prejudice is made. *Thibodeaux v. State*, 628 S.W.2d 485, 487 (Tex. App. – Texarkana 1982, no pet.).

In order to prevail on his ineffective assistance claim, Petitioner would need to show that the court would have granted the motion to quash and also that the State would not have re-indicted him on a charge of third-degree escape. *See Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003)(petitioner could not show prejudice where court found that if indictment had been quashed, State would have sought and obtained second indictment). In Petitioner's case, there was a discrepancy between the caption and text of the indictment but such an error is considered harmless unless Petitioner can show prejudice. *Thibodeaux*, 628 S.W.2d at 487. Even if the court had granted the motion to quash, the State could have re-indicted Petitioner with a corrected indictment. Thus, as the state habeas court found, Petitioner cannot show he was prejudiced by his attorney's

failure to file a motion to quash.  Summary judgment should be entered for Respondent on this issue.

### (2) Failure to Object to Jury Charge

Petitioner contends that his attorney was ineffective for failing to object to the jury charge because it was based on the faulty indictment.  However, the state habeas court found that Petitioner could not show prejudice based on the failure to object and Petitioner has not shown that this assessment was incorrect under the AEDPA standard.

At trial, the parties disputed whether Petitioner caused Sandra Flores's knee injury and if he did, whether it happened while he was trying to "effect his escape," or after his escape was completed.  The jury charge set forth two definitions of escape, one of which included the injury element and one of which did not.  The one that included the injury element was second-degree escape while the one that omitted the element of injury was labeled "misdemeanor escape" but should have been labeled third-degree escape.  (I CR 14-20; D.E. 17-12 at 18-25). [5]  Similarly, the verdict form gave jurors the option of finding Petitioner guilty of "ESCAPE, as alleged in the indictment," or

---

[5]The statute defined escape as a misdemeanor when a person escaped from custody when he was (1) under arrest for, charged with or convicted of an offense; (2) in custody pursuant to a lawful order of a court; (3) detained in a secure detention facility, as that term is defined by Section 51.02 of the Family Code; or (4) in custody on a juvenile matter.  Tex. Pen. Code § 38.06(a) and (b)(West 2007).  A "secure detention facility" refers to a public or private residential facility that includes construction features to restrict movements and activities of juveniles and other individuals held in custody in the facility.  Tex. Fam. Code § 51.02(14).  The jury charge on misdemeanor escape included as an element that the jury had to find that Petitioner was confined in "a secure correctional facility, namely, Port Aransas Police Department jail detention facility." (1 CR 16; D.E. 17-12 at 20).  Addition of that element elevated the offense to third-degree escape.  Tex. Pen. Code § 38.06(c).

"MISDEMEANOR ESCAPE," or of being not guilty. The jury found him guilty of escape as alleged in the indictment, which necessarily was second-degree escape because the description contained the injury element (I CR 21; D.E. 17-12 at 25).

During the punishment phase of the trial, the punishment charge as written and read to the jury stated that the jury had found Petitioner guilty of second-degree escape. Because the second-degree felony was enhanced by two prior felony convictions, Petitioner was to be punished for a term of not less than twenty-five years nor more than ninety-nine years (I CR 22-23; D.E. 17-12 at 16-27). *See also* Tex. Pen. Code § 12.42(d). The judgment reflected that Petitioner was convicted of second-degree escape (I CR 31; D.E. 17-12 at 35).

As discussed above, the Thirteenth Court of Appeals modified Petitioner's judgment on the recommendation of the State to show that he had been convicted of third-degree escape, rather than second-degree escape, because the testimony showed that Flores sustained her injury after Petitioner had completed his escape. The change in the judgment did not change Petitioner's punishment because Tex. Pen. Code § 12.42(d) applies to felony convictions whether they are second- or third-degree.

If Petitioner's attorney had objected to the jury charge at the time of trial, the charge would have been re-drafted to add third-degree escape as an option for the jury. Because Petitioner ultimately was convicted of third-degree escape, he cannot show that he was prejudiced by the failure to object. Also, because of his status as an habitual

felony offender, the punishment for both offenses was the same. Accordingly, he cannot show prejudice and Respondent is entitled to summary judgment on this issue.[6]

### (3) Failure to Present Testimony of Petitioner's Anxiety

Petitioner argues that his attorney provided ineffective assistance because he did not contact Petitioner's treating physicians and family members to testify about Petitioner's anxiety. The state habeas court found that the failure to have the witnesses testify was not ineffective assistance because that was not a defense to the charges and it would not have mitigated his punishment because the jury assessed the minimum number of years possible. Petitioner has not shown that the state court's conclusion was contrary to Supreme Court precedent.

It is extremely difficult to prevail on a complaint of uncalled witnesses in a federal habeas petition because the presentation of evidence is a matter of trial strategy and allegations about the testimony of an uncalled witness are largely speculative. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)(citations omitted). To prevail on such a claim, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed

---

[6] Petitioner did not raise the issue that third degree escape was mislabeled as misdemeanor escape in the jury charge, as discussed in note 5, supra. However, even if he had done so, or if he had argued that the jury should have been allowed to consider the elements of misdemeanor escape, he cannot show prejudice because the evidence supporting his conviction for third-degree escape was factually and legally sufficient. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979)(relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt) and *Brooks v. State*, 323 S.W. 3d 893, 912 (Tex. Crim. App. 2010)(*Jackson* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense).

testimony, and show that the testimony would have been favorable to a particular defense." *Id.* The showing is required for both expert and lay witnesses. *Id.*

Petitioner provided his attorney the names of witnesses and said that they would have corroborated his claim the he was being treated for anxiety. However, he has not shown that the witnesses were available to testify and would have done so. More importantly, Petitioner testified at trial that he suffered from anxiety and was taking medication for it and his testimony was not challenged by the prosecutor. Thus, evidence of Petitioner's anxiety was before the jury (I RR 94-95; D.E. 17-13 at 9-10).

Petitioner argues that if the jury had heard from other witnesses about his anxiety, it might have found him guilty of misdemeanor escape rather that second-degree escape. He claims that the evidence of anxiety would have mitigated punishment because it negated his culpable mental state. However, the distinction between misdemeanor and felony escape is not the mental state of the accused, but whether he was being held on a felony or confined in a secure correctional facility at the time of the escape. Also, Petitioner received the minimum punishment available on the felony charge given his status as an habitual felony offender. For these reasons, Petitioner cannot show that his attorney's failure to have witnesses testify about Petitioner's anxiety was ineffective assistance.

## C. Ineffective Assistance of Appellate Counsel

Claims of ineffective assistance of appellate counsel are reviewed under the *Strickland* standard. A petitioner must first show that his appellate counsel's conduct fell below an objective standard of reasonableness. A reasonable appellate attorney has an

obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *Strickland*, 466 U.S. at 690-691. To show prejudice, a petitioner must show the reasonable probability that, but for unprofessional errors, the result of the proceeding would have been different. *Id.*

Petitioner claims that his appellate counsel was ineffective because he failed to raise the issue of ineffective assistance of trial counsel, failed to challenge the faulty jury charge and failed to challenge the denial of the motion for directed verdict. Petitioner cannot show prejudice for the failure to raise ineffective assistance of trial counsel because, as discussed above, he did not receive ineffective assistance. Also, in Texas, it is virtually impossible to raise a claim of ineffective assistance of counsel claim on direct review. *Trevino v. Thaler*, 133 S.Ct. 1911, 1915 (2013)(citing *Robinson v. State*, 16 S.W.3d 808, 810-811 (Tex. Crim. App. 2000)). Nor can Petitioner show that his appellate counsel was ineffective for failing to challenge the jury charge because, also as discussed above, any prejudice he may have suffered was cured when the Thirteenth Court of Appeals modified the judgment in his case.

Regarding the allegation that his attorney did not challenge the denial of the motion for a directed verdict, the state habeas court found that counsel raised the issue on appeal when he argued that the evidence was legally insufficient to support the conviction. The state habeas court analysis is correct. A motion for directed verdict is a challenge to the legal sufficiency of the evidence. *Garza v. State*, 398 S.W.3d 738, 743 (Tex. App. – Corpus Christi-Edinburg 2010, pet. ref'd). Petitioner's appellate counsel challenged the legal sufficiency of the evidence on appeal and the Thirteenth Court of

Appeals found the evidence to be sufficient. *Huffmaster v. State*, 2009 WL 8730145 at *2-4 (D.E. 17-11 at 4-8). Petitioner cannot make out a claim for habeas relief based on his allegation that appellate counsel failed to challenge the denial of the motion for directed verdict.

**D. Inclusion of Bodily Injury Allegation in Jury Charge.**

Petitioner argues that the trial court erred when it included the allegation of bodily injury in the jury charge. At the time the charge was prepared, the issue of whether Petitioner caused Flores's knee injury and whether it occurred during or after the escape was before the jury. It was only after the trial that the State conceded that the injury occurred after the escape. Thus, it was not error for the trial court to have included that language in the jury charge.

Moreover, even if the charge had contained an error, federal courts do not grant relief the way a state appellate court might. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). It is not enough to show that a jury instruction is "undesirable, erroneous, or even 'universally condemned.'" *Id.* (citing *Donnelly v. DeCristoforo*, 416 U.S. 637, 643 (1974)). The only question is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). While it might have been error for the trial court to not have given the jury an option of third-degree escape in the jury charge, any harm suffered by Petitioner was cured when the Texas Court of Criminal Appeals modified the judgment to show that Petitioner was convicted of third-degree escape rather than

second-degree escape. Therefore, Petitioner cannot show that his due process rights were violated by the jury charge.

**E. Appellate Court Erred by Modifying Instead of Remanding For New Trial**

Petitioner contends that the Thirteenth Court of Appeals erred when it modified the judgment to show he had been convicted of a third-degree felony rather than remanding the case for a new trial. However, Petitioner has not articulated a constitutional harm and none is apparent from the record. The appellate court has the authority to modify a judgment and affirm it as modified. Tex. R. App. P. 43.2(b). Petitioner claims that the jury decided he was guilty based on a defective indictment. But, as discussed above, any prejudice Petitioner suffered was cured when the appellate court modified the judgment. Accordingly, summary judgment should be entered for Respondent on this issue.

**F. Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. See *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.")

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

A slightly different standard applies when the claims are dismissed or denied on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

In Petitioner's case, it is recommended that his claims be denied on the merits. Reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. If the district court orders that Petitioner's habeas petition be denied and Petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 18) be GRANTED and Petitioner's application for habeas corpus relief be DENIED.  It is further recommended that a Certificate of Appealability be DENIED.

Respectfully submitted this 27th day of May, 2015.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).